IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LOLA M. PHILLIPS, | ) | |
| on behalf of R.D.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15cv289-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Plaintiff Lola M. Phillips ("Plaintiff" or "Phillips") filed this lawsuit on behalf of her child, R.D.P., challenging a final judgment by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, in which she determined that R.D.P. is not "disabled" and therefore, not entitled to supplemental security income benefits.  Phillips' application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ determined that R.D.P. is not disabled.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, the court concludes that the Commissioner's decision denying R.D.P. supplemental security income benefits should be reversed and remanded.

## II.  STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I) (1999).  The sequential analysis for determining whether a child claimant is disabled is as follows:

1.   If the claimant is engaged in substantial gainful activity, [s]he is not disabled.

2.   If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment.  If the claimant's impairment is not severe, [s]he is not disabled.

3.   If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec., 3*63 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original)

(quotation marks omitted).  The court must, however, conduct an "exacting examination of

the [Commissioner's] conclusions of law." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.

1990).

### III. INTRODUCTION

#### A.  The Commissioner's Decision

R.D.P. was eight years old at the hearing before the ALJ.  R. 16.  Phillips alleges that,

on January 3, 2006, R.D.P. became disabled due to vision problems, asthma, learning

difficulties, and behavioral problems.  R. 66, 70, 183.  The ALJ, in his opinion, followed the

regulations' three steps listed above when he analyzed R.D.P.'s claim.  After doing so, he

concluded R.D.P. is not disabled and, therefore, denied his claim for supplemental social

security benefits.   Under the first step, the ALJ found that R.D.P. is not engaged in

substantial activity.  R. 39.  At the second step, the ALJ found that R.D.P. suffers from severe

impairments of borderline intellectual functioning, oppositional defiant disorder, and an

attention-deficit disorder/attention-deficit-hyperactivity disorder and non-severe impairments

of asthma/breathing problems, vision problems, and various skin disturbances.  R. 40.   At

step three, the ALJ found that R.D.P.'s impairments, when considered singularly or in

combination, do not meet or medically equal in severity the criteria for any impairment listed

at 20 CFR, part 404, Subpart P, Appendix 1.  (*Id.*).  In addition, the ALJ concluded that

R.D.P.'s impairments do not functionally equal a Listing.  R. 41-51.  Consequently, the ALJ

determined that R.D.P. is not disabled.  R. 52.

#### B.  The Plaintiff's Claims

Phillips presents the following claims:

1.    Whether the ALJ failed to properly evaluate whether R.D.P.'s mental conditions meet or equal 20 C.F.R. 505, Subpt P, App. 1, § 112.05F.

2.    Whether the ALJ erred by failing to discuss or resolve conflicting evidence of record.

3.    Whether the ALJ erred by failing to fully develop the record.

## IV.  DISCUSSION

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of several of Phillips' specific arguments because the court concludes that the Commissioner erred as a matter of law, and thus, this case is due to be remanded for further proceedings.  Specifically, the court finds that the ALJ failed to properly consider whether R.D.P. meets or equals Listing 112.05(f) by resolving inconsistencies in the evidence and fully developing the record concerning the extent of R.D.P.'s cognitive and communicative functioning.

Phillips argues that the ALJ erred as a matter of law when he failed to find her son presumptively disabled under Listing 112.05(F).  Specifically, Plaintiff argues the ALJ failed to provide any rationale to support his finding that R.D.P. does not meet or medically equal the listing.  Plaintiff contends that R.D.P.'s diagnosis of borderline intellectual functioning coupled with test results and reports from his mother and teachers indicating he is markedly

5

impaired in age appropriate cognitive/communicative function establish that he meets Listing 112.05(F).

To determine whether a plaintiff meets or equals Listing 112.05F, the regulations provide:

112.05 *Intellectual Disability*: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied. . . .

F.  Select the appropriate age group:

. . .

2.  For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. 404, Subpt P, App. 1, § 112.05F

Section 112.02B2a provides:

2.  For children (age 3 to attainment of age 18), resulting in at least two of the following:

a.  Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of age appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication.

20 C.F.R. 404, Subpt P, App. 1, §112.02B2a.

The ALJ determined that R.D.P. does not meet the Listing.  Specifically, the ALJ

found:

> The claimant's borderline intellectual functioning does not meet 112.05 because it is not characterized by . . . (f) marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication, and a physical or other mental impairment imposing an additional and significant limitation of function. (See Exhibits B1F, B3F, B6F, and B7F).

R. 40-41.

The ALJ provides no rationale for his determination that R.D.P.'s borderline intellectual functioning does not meet or medically equal Listing 112.05F. The ALJ merely cites to four documents, Exhibits B1F, B3F, B6F, and B7F, without explanation. This court is left to guess the reasons for the ALJ's reference to these particular records. By failing to discuss the evidence in light of Listing 112.05's analytical framework, the ALJ has left this court with grave reservations as to whether his opinion adequately addresses the criteria of the listing. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

Exhibit B1F includes 50 pages of medical records from South Alabama Pediatrics dated between January 3, 2006 and October 15, 2010, which indicate R.D.P. received treatment for a variety of childhood illnesses, such as colds, rashes, and sinus infections. R. 285-335. Exhibit B3F includes 35 pages of medical records from Dr. Steven Davis, Sr., a doctor of osteopathy, indicating R.D.P. sought treatment for bronchitis, dermatitis, colds, and other general childhood illnesses between January 17, 2006 through January 27, 2012. R.

343-377.  The court is unsure of the particular reasons for the ALJ's reference to these particular medical records.

The ALJ also cites to Exhibit B6F, which includes an Individualized Education Program ("IEP") for the 2012-2013 school year at Opp Elementary School and the results of several test scores.  R. 388-394.  The information in the IEP contains somewhat conflicting information. For example, the student profile states R.D.P. "is a student who wants to do well, but has difficulty with basic comprehension skills in the areas of reading and math" and that he "will be repeating kindergarten for the 2012-2013 school year."  R. 388.  The profile, however, also indicates that R.D.P.'s "strengths are in the area of oral response and oral language." *Id*.  In addition, the IEP team found:

> [R.D.P.] performs below average compared to same age peers in the classroom.  He has difficulty keeping up with the teacher and maintaining grade level work.  The teacher uses peer helpers and redirection to help the student have success within the classroom.  She also uses one-to-one teaching to re-teach skills that he is having difficulty with and seems to struggle with mastering.

> In the area of mathematics, [R.D.P.] is currently working on a PK.0 grade level.  He is . . . not capable of identifying numbers 0-10 or identifying the addition and subtraction sign.  He will continue to work on math computation problems that include[] rote counting, identifying a square, circle and triangle, and number recognition.  He is currently working below grade level with accommodations in the area of mathematics.

> [R.D.P.] is currently reading on a PK.0 grade level. [R.D.P.] has great difficulty completing and reading kindergarten level texts.  DIBELS scores in the area of phoneme awareness indicate that the student is performing well below grade level with a score of 12 and in reading fluency with a score of 9 in December 2011.

R. 388.

The IEP also lists the results of several test scores. On March 6, 2012, R.D.P. received a full-scale score of 80, a non-verbal score of 75, a verbal score of 86, and a predicted achievement score of 87 on the Stanford-Binet Intelligence Scale. On March 12, 2015, however, R.D.P. received a total achievement score of 65, as well as scores of 64 in Mathematics, 52 in Early Reading Skills, 69 in Alphabet Writing, 82 in Oral Language, and 61 in Written Expression on the Wechsler Individual Achievement Test - Third Edition ("WIAT III"). In addition, the results of the Behavior Assessment System of Children, Second Edition ("BASC-2") conducted on March 2, 2012, indicates R.D.P. received an adaptive skills composite score of 71, as well as composite scores of "115 Hyperactivity, 113 Aggression 128, Conduct Problems 116, Externalizing Problems 121, Anxiety 89, Depression 95, Somatization 100, Internalizing Problems 94, Attention Problems 115, Learning Problems 139, School Problems 130, Atypicality 113, Withdrawal 103, Adaptability 79, Social Skills 76, Leadership 74, Study Skills 68, and Communication 79." R. 390.

The IEP team also assessed work samples completed by R.D.P. On January 3, 2012, R.D.P. did not "get any correct" on a math worksheet in which he was instructed to "count[] dots and writ[e] correct number." R. 392. He also did "not know any of the Kindergarten High Frequency words." *Id*. On March 6, 2012, the IEP team noted that his work samples "indicate that student is performing below grade level at this time within the general education classroom." R. 391. Finally, the IEP team documented a "severe discrepancy" of 22 points between R.D.P.'s predicted achievement of 87 and actual achievement of 65. R.

393.  On March 23, 2012, the IEP team found R.D.P. eligible to receive special education

accommodations based on his "Specific Learning Disability." R. 394.

The ALJ also cites to a psychological report, Exhibit B7F, prepared by Dr. Fernelle

L. Warren, a clinical psychologist, on June 19, 2012.  Dr. Warren found that "[o]verall, his

responses to mathematical and serial tasks, memory functions, fund of information, and

ability to think in abstract terms appeared to be consistent with a level of functioning

estimated to be within the Borderline to Mental Retardation range of intelligence."  R. 397.

The psychologist also found that R.D.P.'s ability to function in an age appropriate manner,

as well as the ability to understand instructions and relate to others socially, cognitively,

communicatively, adaptively, behaviorally, and persist on a task, is mildly to moderately

impaired. Dr. Warren's diagnostic assessment was oppositional defiant disorder; attention

deficit hyperactivity disorder, combined type, provisional; borderline to mental retardation,

provisional; asthma; and academic problems.  The psychologist also found that a favorable

response to treatment for disruptive behaviors and ADHD is expected within the next 6 to

12 months and strongly encouraged R.D.P. to continue to consult with a therapist and

psychiatrist with regards to treating and managing his symptoms.   Dr. Warren also

recommended "[a]dditional testing . . . to substantiate a diagnosis of ADHD and to assess his

learning difficulties." *Id.*

Despite the inconsistent scores and a mental health specialist's recommendation to

perform additional testing to assess R.D.P.'s learning difficulties, the ALJ did not further

explore this matter.  It is error for the ALJ to fail to obtain additional testing or otherwise

develop the evidence, if that information is necessary to make an informed decision.  *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1998).  Because the ALJ ignored Dr. Warren's recommendation to obtain additional testing to assess the extent of R.D.P.'s learning difficulties, the court is unable to determine whether the Commissioner's decision is supported by substantial evidence.

In addition, the ALJ ignored historical and other information from parents or teachers when determining R.D.P. does not meet or medically equal Listing 112.05F.  If "the results fo standardized intelligence tests are unavailable," such as "where the child's young age or condition precludes formal standardized testing," mental retardation may be proven only through the listings.  Prior to R.D.P. attending elementary school, he did not participate in standardized testing.  Thus, the mother's reports concerning R.D.P.'s behavioral and learning difficulties prior to and during kindergarten are persuasive.  In addition, several teacher questionnaires indicate R.D.P. struggles in school.  On a teacher questionnaire form, an Opp Elementary kindergarten teacher indicated that R.D.P. performs below grade level in reading, math, and written language and that he has a "serious problem" with reading and comprehending written material, comprehending and doing math problems, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussion.[2]  R. 193.

---

[2] The Commissioner argues that the court should reject this teacher questionnaire because it is unsigned.  The document, however, indicates that the form was sent to his teacher on March 8, 2012, that the teacher who completed the form has known R.D.P. for a period of eight months, that she sees him five days a week between the hours of 7:40 a.m. and 2:40 p.m., and that he is a kindergarten student.  The court finds that, under the circumstances, the person who completed the form is an "individual[] who [has] knowledge

Phillips also provided an additional teacher questionnaire, in which an Opp Elementary School teacher indicated that she has known R.D.P. for at least four months, that she sees him "most of the day," and that she is his Science, Math, and Homeroom teacher.[3] R. 216.  The teacher noted that R.D.P. "receives and needs help with all grade level material" and "functions well below grade level," that he "can rarely complete any task without teacher or peer assistance," and that he "yells out and injects himself into others conversations and classroom discussions."  R. 217-219.  In addition, she rated R.D.P. as having "a very serious problem" understanding school and content vocabulary, reading and comprehending written material, providing organized oral explanations and adequate descriptions, expressing ideas in written form, carrying out multi-step instructions, and using adequate vocabulary and grammar to express thoughts/ideas in general everyday conversation. *Id.*  She also ranked R.D.P. as having "a serious problem" with comprehending oral instructions, comprehending and doing math problems, understanding and participating in class discussions, recalling and applying previously learned material, applying problem-solving skills in class discussions, using language appropriate to the situation and listener, and introducing and maintaining relevant and appropriate topics of conversation.  *Id.*

The Appeals Council also received additional evidence, including other test scores and school records.  Phillips provided the sub-test scores and clinician's report from the WIAT-

---

of the child, when such information is needed and available."

[3]Although the form is undated, it is obvious that the questionnaire was completed by a teacher who sees R.D.P. on a regular basis during his attendance at Opp Elementary School.

III conducted on March 12, 2012.  R. 227.  The report indicates R.D.P. received "below average scores," ranking in the fifth percentile for oral discourse comprehension and thirteenth percentile for expressive vocabulary.  R. 228.  He also scored "below average" in oral language and "low" in written expression, mathematics, and total achievement.  R. 229.

Phillips also provided an IEP for the 2013-2014 school year, which includes a NICHQ Vanderbilt Assessment Scale completed by R.D.P.'s teachers.  On a scale of 1 to 5, with 1 being "excellent" and 5 being "problematic," the general education teacher found R.D.P.'s academic performance to be "problematic" in reading, mathematics, and written expression. R. 418.  The special education teacher also found R.D.P's performance in reading and written expression "problematic" and his performance in mathematics "somewhat of a problem." R. 414.  The Appeals Council, however, "found that this information does not provide a basis for changing the Administrative Law Judge's decision."  R. 2.  It is impossible for this court, however, to determine whether the Commissioner's determination is supported by substantial evidence until the inconsistencies in the record concerning R.D.P.'s cognitive and communicative functioning are resolved.

After reviewing the record, the court concludes that the ALJ failed to articulate adequately the basis for his conclusion that R.D.P. does not meet or equal Listing 112.05F and failed to develop the record in full by obtaining or considering additional testing as recommended by a mental health specialist to determine the extent of R.D.P.'s learning difficulties, precluding this court from engaging in meaningful judicial review of Phillips' claims.

13

## IV.  CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner for further

proceedings consistent with this opinion.

A separate order will be entered.

DONE this 20th day of November, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

14